IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAND & SON CONSTRUCTION COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 04-0794-CV-W-GAF ) |
| THAXTON ELECTRIC CO., INC., | ) ) |
| Defendant. | ) ) |

**ORDER**

Presently before the Court is a motion to dismiss (Doc. 6) submitted by the defendant Thaxton Electric Co., Inc. ("Thaxton") for lack personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] Plaintiff Rand & Son Construction Company ("Rand") has brought this action for breach of contract and opposed this motion to dismiss. For the following reasons, this Court finds that personal jurisdiction over Rand is lacking and, accordingly, the motion to dismiss is GRANTED.

The present action arises from a contract between Rand and the United States Department of Defense for the remodeling of a commissary on the military base located in Altus, Oklahoma. On March 7, 2003, Rand subcontracted with Thaxton ("the Subcontract") for the furnishing of all labor and materials for the electrical work on Rand's contract with the Department of Defense. In November of 2003, disputes over the scope of Rand's and Thaxton's work arose which culminated in the termination of the

---

[1] As an alternative to dismissal, Thaxton has moved to transfer venue from this Court to the United States District Court for the Western District of Oklahoma pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a). The granting of the motion to dismiss, however, has rendered the motion for transfer of venue moot.

1

Subcontract on January 7, 2004, prior to the completion of the work required under the Subcontract. Rand is a Missouri corporation that maintains its principal place of business in Lee's Summit, Missouri. Thaxton is an Oklahoma corporation that maintains its principal place of business in Mount View, Oklahoma. In the complaint, Rand alleged that personal jurisdiction over Thaxton existed because Thaxton had entered the contract with Rand, sent correspondence and invoices to Rand's office in Missouri, and received payments from Rand's Missouri office.

In order "[t]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Sewart Info. Serv. Corp., 327 F.3d 642, 647 (8th Cir. 2003). All evidence must be viewed in the light most favorable to the nonmoving party and all factual conflicts must be resolved in its favor. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004). Notwithstanding, the party seeking to establish the existence of personal jurisdiction carries the burden of proof, which does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

A federal court sitting in diversity "may assume jurisdiction over nonresident defendants only to the extent permitted by the long arm statute of the forum state and by the Due Process Clause." Dever Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004). "[I]t is well settled . . . that the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents 'to the extent permissible under the due process clause.'" Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002)(quoting Van Praag v. Columbia Classics Corp., 849 F.2d 1106, 1108 (8th Cir. 1988)); *see also* Romak, 354 F.3d at 984 (citing Mo. Rev. Stat. § 506.500.1(1),(2)). As such, an inquiry into whether the assertion of personal jurisdiction would violate the due process clause is sufficient to resolve the matter now before the Court. Porter, 293 F.3d at 1075.

2

Case 4:04-cv-00794-GAF   Document 17   Filed 07/28/05   Page 2 of 5

In order to satisfy the requirements of the Due Process Clause, the defendant must have sufficient minimum contacts withe the forum state "such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). Specifically, the defendant must by some act purposefully avail itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958)(citing International Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945)).

In conducting an inquiry into the propriety of personal jurisdiction over a party, a district court is to consider "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." Burlington, 97 F.3d at 1102. Significant weight is given to the first three factors. Dever, 380 F.3d at 1074. Additionally, greater elaboration on the third factor, the relation of the cause of action to the contacts, provides guidance on the distinction between the two main types of personal jurisdiction: general and specific. Burlington, 97 F.3d at 1102. General jurisdiction manifests itself as a court's power to adjudicate any cause of action independent of the relationship between the cause of action and the defendants contacts with the forum state. Id. at 1103. Specific personal jurisdiction, which is the focus of this Court's inquiry, is directed at "causes of action arising out of or related to a defendant's actions within the forum state." Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir. 1993).

In opposition to the motion to dismiss, Rand asserts that the Subcontract is sufficient to establish the minimum contacts required by the Due Process Clause. In support of this position, Rand argues not

3

only that the Subcontract was drafted in Missouri, but also that the final act that created a binding contract, the signature memorializing Rand's acceptance of Thaxton's bid, occurred in Missouri. Additionally, Rand contends that Thaxton has other contacts with Missouri, namely that invoices were mailed to Missouri, payments were sent from Missouri, and Rand suffered injury in Missouri as a result of Thaxton's nonperformance. The Court finds these arguments to be unavailing. Other than the Subcontract, the telephonic negotiations culminating in the contract, the invoices, and the payments, Thaxton has no meaningful contacts with the state of Missouri.

The Eighth Circuit has specifically held that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state." Iowa Electric Light & Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979)(citing Aaron Ferer & Sons Co. v. American Compressed Steel Co., 564 F.2d 1206, 1211 (8th Cir. 1977)). The Eighth Circuit has further proclaimed this to be the rule when, as is the case here, "all elements of the defendant's performance are to take place outside of the forum." Iowa Electric, 603 F.2d at 1303. Moreover, it is the defendant's contacts with the forum state which are of importance in determining the propriety of personal jurisdiction, not the defendant's contacts with a resident of the forum state. Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co., 558 F.2d 450, 455 n. 6 (8th Cir. 1977). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Hanson, 357 U.S. at 253.

In the instant case, the Subcontract called for the performance of the Thaxton's duties exclusively in the state of Oklahoma and the damages claimed by the Rand allegedly result from the Thaxton's failure to perform those duties in Oklahoma. Additionally, Thaxton has never: been licensed to do business or

4

done business in Missouri; been domesticated under Missouri laws or had an agent for service of process in Missouri; maintained an office, telephone, or mailing address in Missouri; owned any real or personal property in Missouri; assigned or stationed any employee to work in Missouri; had a Missouri shareholder, held any corporate meetings, or maintained any business records or bank accounts, or paid taxes in Missouri. As such, this Court cannot conclude that, by simply entering the Subcontract and seeking payment by mailed invoice, Thaxton had purposefully availed itself of the benefits and protections of the laws of Missouri.

Based on the foregoing, this Court finds that the exercise of personal jurisdiction in this case over the defendant Thaxton Electric Co., Inc. would violate the due process which is guaranteed by the United States Constitution. As a result, the motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: July 28, 2005